SHERMAN HOSTETTER GROUP REAL ESTATE and PERSONAL Form 13 (6-19)

**AGENT FOR SELLER** Sherman Hostetter Group LLC (Hostetter Auctioneers) (Seller's Agent Only)   PH 724-847-1887
**ADDRESS** 7055 Big Beaver Blvd., Beaver Falls, PA 15010   FAX 724-847-3499
**WEBSITE** www.SHAuctions.com
**EMAIL ADDRESS** sold@HostetterAuctioneers.com

1. THIS AGREEMENT, dated November 20th, 2019 is between
   SELLER(S) Bononi & Company, P.C.
   Address 20 N. Pennsylvania Ave. Suite 201 Greensburg, PA 15061 hereafter "Seller,"
   and BUYER(S) Paul Schreiber  412-262-5700
   Address 1215 Maple St.
   Coraopolis, PA 15108 hereafter "Buyer."

2. PROPERTY - Seller hereby agrees to sell and convey to Buyer, who hereby agrees to purchase at auction: ALL THAT CERTAIN lot or piece of ground with buildings and improvements thereon erected, if any, known as: Thorn Run Road in the Township of Moon County of Allegheny in the Commonwealth of Pennsylvania. Identification (e.g., Tax ID#; Lot, Block; Deed Book, Page, Recording Date, Zoning) 0504-D-00350-0000-00
   Zoning: C-1 Neighborhood Commercial District

3. TERMS -
   (A) Purchase Price Eighty one thousand four hundred dollars ($81,400) Dollars, which shall be paid to Seller by Buyer as follows:
   (B) Cash [ ] or check [ ] at signing this agreement: $ 7,400
   (C) Cash [ ] or check [ ] on or before: $
   (D) $
   (E) Cash, cashier's or certified check at time of settlement: $ 74,000
   TOTAL $ 81,400
   (F) Deposits will be held by Sherman Hostetter Group LLC (Hostetter Auctioneers), unless otherwise stated here: -----
   (G) Written approval of Seller to be on or before: November 22nd, 2019
   (H) Settlement to be made on or before: January 6th, 2020
   (I) Conveyance from Seller will be by fee simple deed of special warranty unless otherwise stated here: -----
   (J) Payment of transfer taxes will be divided equally between Buyer and Seller unless otherwise stated here: -----
   (K) Real Estate Taxes will be prorated on a fiscal year basis, unless otherwise stated here: -----
   (L) At time of settlement, the following shall be adjusted pro-rata on a daily basis between Buyer and Seller, reimbursing where applicable: taxes, rents, interests on mortgage assumptions; condominium fees and homeowner association fees, if any, water and/or sewer rents, if any, together with any other lienable municipal service. The charges are to be pro-rated for the period(s) covered: Seller will pay up to and including the date of settlement; Buyer will pay for all days following settlement.

4. FIXTURES AND PERSONAL PROPERTY
   (A) Included in this sale and purchase price are all existing items permanently installed on or in the Property, free from liens, including water treatment system, shrubbery, plantings and unpotted trees; crops, any remaining fuels stored on the Property at the time of the settlement; Also included: -----
   (B) EXCLUDED FIXTURES AND ITEMS: -----
   (C) LEASED items (items not owned by Seller): -----

5. SPECIAL CLAUSES
   (A) **Auction Law** - This Real Estate described is sold by auction and under auction law in the Commonwealth of Pennsylvania (whether before, during or after the auction; or by live auction, silent auction, private auction, sealed bid auction, internet auction, absentee bid or a privately negotiated sale). The Sellers have set the terms in this agreement for the conveyance of the real estate and/or have given the authority to the Auctioneers to set the terms and conditions of this auction. The Buyers, upon signing this agreement, acknowledge and accept all terms made by the Sellers and Auctioneers.
   (B) **Absolute/Reserve** - The Sellers are selling this real estate at [ ] reserve [X] absolute auction including all rights and powers afforded the Seller by law.

Buyer Initials _____   Seller Initials EEB

for EEB   1

(C) **Agency** – Buyers and Sellers acknowledge and understand that the Hostetter Auctioneers and their staff, employees, etc., are an agent for the Seller Only. The Buyer in this section of Real Buyer Representation or is waiving the representation in this transaction.

(D) **Lead** – Lead Based Paint Hazard Reduction Act Notice Required for Properties Built before 1978. Buyer acknowledges receipt of Lead Base Paint Notice. Buyer has a 10-day period immediately prior to the auction to conduct a risk assessment or inspection of the Property for the presence of lead based paint and/or lead based paint hazards. The Buyer hereby waives the Lead Base Paint risk assessment or inspection of the property and is purchasing the property "As-Is" and agrees to the release set forth in section 6, 7 and 23 of this agreement.

(E) **Radon** – Buyer understands that Buyer has the option to request that the Property be inspected for radon by a certified inspector. BUYER WAIVES THIS OPTION and agrees to the RELEASE set forth in section 6, 7 and 23 of this agreement.

(F) **Urea Formaldehyde/Environmental Risks** – See notice on page 8 of this agreement. Buyers are informed – that Sellers are unaware of any adverse presence of urea formaldehyde insulation or other environmental hazards. The Buyers should obtain any inspections desired to confirm that the property is environmentally safe. Should the condition of the premises be determined as unsafe as to environmental standards as set by the proper authorities, the Sellers may elect to cure the situation, or give credit at closing for remedy, in which event the Buyers will proceed with the purchase, or the Sellers may declare this agreement null & void and only be responsible to the Buyers for the return of all hand money. The Buyer hereby waives the Urea Formaldehyde/Environmental Risk assessment and/or inspection of the property and is purchasing the property "As-Is". Buyers understand any unfavorable findings are not a contingency in this agreement and agree to release as set forth in sections 6, 7 and 23 of this agreement.

(G) **Asbestos** – Used as a component of any building material may pose a health hazard. The Buyer may wish to have an inspection to determine if hazards are present in subject property or, if known to be present, to what degree. Buyers understand any unfavorable findings are not a condition or contingency of this agreement and agree to release as set forth in section 6, 7 and 23 of this agreement.

(H) **Mold** – Buyer agrees to hold the Seller and Seller's Agents harmless in the event any mold contaminants are discovered on the property. Buyer understands mold is a naturally occurring microbe and that mold should pose no health threat unless concentrated at high levels in the living environment. The only way to determine if a mold like substance is truly mold or is present at high levels is through sample collecting and analytical testing. If Buyer has reason to believe there is a potential of mold contaminates, Buyer should obtain an inspection prior to the auction or making an offer. Any and all inspections and tests are at the Buyer's expense. Buyers understand any unfavorable findings are not a condition of this agreement and agree to release as set forth in section 6, 7 and 23 of this agreement.

(I) **Wetlands** – Buyer understands and agrees that it is their responsibility to research for any and all wetland and flood plain areas effecting this property and that findings whether favorable or not, are not a contingency in this agreement.

(J) **Compliances** – Buyer understands and agrees that any and all requirements needed for compliance with all Local, State and Federal laws, ordinances, inspections, permits, zoning, occupancy, etc., to fulfill obligations for property settlement are strictly and solely the Buyer's expense and obligation.

(K) **Leases** – Buyer accepts the property with any and all leases, known and unknown, pertaining to buildings, land, crops, mineral rights, including oil, gas, etc, equipment, personal property, etc., including any part thereof subject to a lease. Seller is obligated to provide any known leases to the Auctioneers and potential Buyers in a timely manner for inclusion in bidders packets, marketing program and sales agreement.

(L) **Consumer Notice** – Buyer & Seller have received the Consumer Notice (when registering or in the bidders packet) as adopted by the Real Estate Commission act 49 Pa. Code 35.366.

6. **AS-IS** - The Buyer hereby certify that they understand that they are purchasing the real estate in an "AS IS" condition and will accept the property in spite of any defects or conditions, known or unknown, visible or not visible, and therefore the Buyers do hereby release and forever discharge the Sellers and Auctioneers, their respective heirs, licensees, agents, employees, successors and assigns from any and all claims liabilities, losses, damages, costs, and expenses resulting therefrom. Neither the Sellers, Auctioneers, licensees, agents, nor employees shall be liable for any cost including damages, recession, reformation, allowance or adjustments, based on the failure of any component, property or aspect of the real estate, to conform to any specific standard and/or expectation of the Buyers. Buyers understand any unfavorable findings are not a contingency in this agreement and agree to release as set forth in sections 6, 7 and 23 of this agreement.

7. **PROPERTY INFORMATION** - In entering into this agreement, the Buyers have not relied on any representation, claim, oral understanding, advertising, promotional activity, marketing, brochure, social media, bidders packet, or plan of any kind made by the Seller, Auctioneers, licensees, agents or employees. The Sellers, Auctioneers, licensees, agents and employees make no representations, warranties or guarantees either expressed or implied, written or oral of any kind. All information furnished regarding the property is from sources deemed reliable, however it is specifically not guaranteed and is subject to errors and omissions, and may be provided or acquired from outside sources. The Buyers hereby certify they have relied solely on their own personal investigations and inspections relative to making an offer or bid to purchase the subject property. Buyer and Seller acknowledge that any Auctioneer, Brokers, Licensees, Agents and/or employees identified in this agreement, is not an expert in construction, engineering and or environmental matters, and has not made and will not make any representations or warranties, nor conduct investigations of any kind including environmental condition or suitability of the property or any adjacent properties.

Buyer Initials _____    Seller Initials _____

2

8. **NO MORTGAGE CONTINGENCY** - This transaction is all cash to the Seller. Buyer understands that there is no mortgage financing contingency in this agreement. If for any reason, Buyer cannot close on this transaction the Buyer will forfeit their deposit and may be subject to legal proceedings. The Buyer understands that any and all required or needed repairs, inspections, surveys, permits, etcetera are strictly and solely the Buyers expense and obligation. The Buyer, upon receipt, will deliver a copy of the mortgage lender's requirements to Sherman Hostetter Group LLC (Hostetter Auctioneers) and to Seller. Buyer understands that there is no mortgage contingency in this agreement.

9. **DEPOSIT** - Buyer and Seller hereby agree that the deposit monies will be placed in Sherman Hostetter Group LLC (Hostetter Auctioneers) Real Estate Escrow account until closing or termination of this agreement. Buyer's deposit is non-refundable. This offer is irrevocable by the Buyer, including the extension of time for the Seller to correct the Title. If the Buyer fails to comply with the terms and conditions of this agreement, Buyer shall forfeit the deposit, as assessed and liquidated damages, and the Seller may proceed to make a resale of this property, either at public or private auction or at a privately negotiated sale. Upon retention of the Buyers deposit, the Sellers and Auctioneers will divide said deposit equally (50-50) or in accordance with the Auction Listing Agreement, and the Auctioneers in no case or manner will be held responsible by the Sellers or Buyers for either parties performance or non-performance to purchase. Sellers agree that the return of the Buyer's deposit (for any reason) does not relieve the Seller of the Auctioneers full fee/commission due.

10. **INSPECTIONS**
    (A) The Buyers, before bidding and before signing this agreement, were afforded the opportunity to personally inspect the real estate and to have, at the Buyers expense and obligation, professional inspectors, reputable certifiers, insurer representatives, appraisers, bankers, surveyors, title insurers, municipal officials, etcetera, investigate and inspect the real estate for the Buyer.
    (B) The Buyers are purchasing solely in reliance upon their own investigation and inspection and that there are no representations or warranties, expressed or implied, made by the Sellers, Auctioneers, agents or employees. Seller further agrees to permit any other inspections required by lending institutions, insuring agencies, etceteras, or provided for in the terms of this agreement. Any and all expenses and obligations for all repairs, inspections, surveys, permits, etc. are strictly and solely the Buyers responsibility.
    (C) Buyer understands that Buyer has the option to request inspections of the property (wood infestation, certificate of occupancy, lead base paint, radon, mold, urea formaldehyde, environmental risks, water, sewer, building, or mechanical inspections, etc.) Any and all expenses and obligations for such inspections and remedies are strictly and solely the Buyers. The Buyers understand they are purchasing the property "AS-IS" and any unfavorable findings are not a contingency in this agreement and agree to release as set forth in sections 6, 7 and 23 of this agreement.
    (D) If an occupancy certificate is required, Buyer shall, at Buyer's expense and obligation, order the certificate for occupancy. The transaction is not contingent upon the Buyers ability to obtain an occupancy permit. In the event repairs/improvements are required for the issuance of the certificate, Buyer shall, make the required repairs/improvements at Buyers expense and obligation.
    (E) Buyer understands and agrees that any and all inspections and their findings (favorable or not) are not a contingency in this agreement.
    (F) The Buyers should obtain any inspections desired to confirm that the property is environmentally safe. Should the condition of the premises be determined as unsafe as to environmental standards as set by the proper authorities, the Sellers may elect to cure the situation, or give credit at closing for remedy, in which the Buyer will proceed with purchase, or the Sellers may declare this agreement null and void and only be responsible to the Buyers for the return of all hand money.
    (G) Buyer reserves the right to make a pre-settlement walk-through inspection of the property.

11. **TITLE, SURVEYS, AND COSTS**
    (A) The Sellers shall convey the title in fee simple deed of <u>special warranty.</u> The property is to be conveyed free and clear of all liens, encumbrances, and easements, EXCEPTING HOWEVER the following; existing deed restrictions, historic preservation restrictions or ordinances, building restrictions, ordinances, easements of roads, easements visible upon the ground, easements of record, privileges or rights of public service companies, if any; otherwise the title to the above described real estate shall be good and marketable and such as will be insured by a reputable Title Insurance Company at the regular rates. All Title work, Title insurance, and all expenses incurred by the Buyer (prior to and after the closing) are strictly and solely the expense and obligation of the Buyer. The Buyer accepts present condition of the Title of the Real Estate. The Buyer will give a three-month extension past the closing date listed in 3H of this agreement for the Seller to correct any title problems to convey a free and clear deed.
    (B) In the event Seller is unable to give a good and marketable title and such as will be insured by a reputable Title Insurance Company at the regular rates (in the timeframe mentioned in 11 A), the Buyer shall have the option of taking such title as Seller can give without changing the price, or of being repaid the deposit paid by the Buyer to Seller on account of purchase price, and there shall be no further liability or obligation on either of the parties hereto and this Agreement shall become NULL and VOID.
    (C) Any survey or surveys which may be required by the Title Insurance Company or the abstracting attorney, for the preparation of an adequate legal description of the Property (or the correction thereof), shall be secured and paid for by the Buyer, including any survey or surveys desired by Buyer or required by the mortgage lender, also shall be secured and paid for by Buyer. All expenses incurred by the Buyer are strictly and solely the expense and obligations of the Buyers.

Buyer Initials _____    Seller Initials _EEB_ _CRS_
_for EEB_

3

12. **ZONING CLASSIFICATION/RIGHTS OF WAYS** – The Buyers acknowledge that they have had the opportunity to investigate zoning with the necessary authorities (state, county, and local) to their satisfaction for their intended uses of the property before signing this agreement and are purchasing the property "AS-IS" - "Where Is" with the current zoning, if any. This property is [X] zoned (see #2 of this agreement for zoning) [ ] not zoned. The Buyers are purchasing this real estate subject to any and all restrictions, covenants, leases, right of ways, etcetera of record. To the extent that this agreement is intending to convey mineral rights including oil, gas, etc, the Buyers acknowledge their awareness that Sellers can convey only what they own.

13. **LAND USE RESTRICTIONS OTHER THAN ZONING** – [X] none known, [ ] Farmland and Forest Land Assessment Act (Clean & Green), [ ] Open Space Act (preservation of land in farm, forest, water supply or open space uses). Seller has no knowledge of any rights to timber, crops or minerals, except coal (see section #14), that do not transfer with the property unless stated here: \_\_\_\_\_-----_____

14. **COAL NOTICE** - THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHTS OF SUPPORT UNDERNEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL RIGHT TO REMOVE ALL SUCH COAL AND IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE, BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND. ("Buyer acknowledges that he may not be obtaining the right of protection against subsidence resulting from coal mining operations, and that the property described herein may be protected from damage due to mine subsidence by a private contract with the owners of the economic interests in the coal). This acknowledgement is made for the purpose of any Count, State or Federal compliances required for Mine Subsidence and/or Land Conservation". Buyer also agrees to sign the deed from Seller which deed may contain the aforesaid provision.

15. **SEWAGE** – This property is serviced by: [ ] public sewage system, [ ] an off-property sewage disposal system, [ ] an individual on-lot sewage disposal system, [ ] a holding tank, [ ] has no sewage disposal system. A connection to an off-site sewage system is [X] available or [ ] not available. (This paragraph deleted if a community sewage is available) Section 7 of the Pennsylvania Sewage Facilities Act provides that no person shall install, construct, or request bid proposals for construction, alter or occupy any building or structure for which an individual sewage system is to be installed without first obtaining a permit. The Buyer has been advised to contact to local agency charged with administering the Pennsylvania Sewage Facilities Act 35 P.S. 750.1 to determine the procedure and requirements for obtaining such a permit. Buyer understands that Buyer has the option to request inspections of the properties sewer system (if any). However, any and all requirements, expenses and obligations for such inspections and remedies are strictly and solely the Buyer's. The Buyers understand they are purchasing the property "AS-IS" and agree to the release set forth in section 6, 7 and 23 of this agreement.

16. **WATER** - Source of water is - [ ] a public water system, [ ] a well located on the property, [ ] a well located off the property, [ ] an individual water system, [ ] a shared water system, [X] no known source of water on the property. Buyer is aware there is no contingency in this agreement for the property to have a water source located on the property or available from and off-site source, nor the quantity and quality of the water (if any). Buyer understands that Buyer has the option to request inspections of the properties water source (if any). Any and all requirements, expenses and obligations for such inspections and remedies are strictly and solely the Buyers. The Buyers understand they are purchasing the property "AS-IS" and agree to the release set forth in section 6, 7 and 23 of this agreement.

17. **POSSESSION/SETTLEMENT** - Possession is to be delivered by deed and keys (if any keys), at time of settlement. Settlement is to be on or before the date listed on 3H of this agreement unless extended by Seller as per section 11A of this agreement. The settlement of this transaction shall be held at the office of the Buyers attorney or title company in the county of the property being conveyed. The Sellers may have an attorney approve the documentation's and settlement. All parties are to receive written or oral notice from the settlement officer for the closing. Possession is given upon final settlement. Assignment of existing lease(s), together with any security deposits and interest, at the time of settlement, if property is leased at the execution of this agreement. Seller will not enter into any new leases, extensions of existing leases, or additional leases for the property without written consent of Buyer.

18. **RECORDING** - This Agreement shall not be recorded in the Office for the Recording of Deeds or in any other office or place of public record and if Buyer causes or permits this Agreement to be recorded, Seller may elect to treat such act as a breach of this Agreement.

19. **ASSIGNMENT** - This Agreement shall be binding upon the parties, their respective heirs, personal representatives, guardians and successors, and to the extent assignable, on the assigns of the parties hereto, it being expressly understood, however, that Buyer shall not transfer or assign this Agreement without the written consent of Seller. This agreement, with all terms and conditions including attachments, shall survive settlement or lack thereof.

Buyer Initials _____    Seller Initials _____

for EEB

4

20. **MAINTENANCE AND RISK OF LOSS**
    (A) Seller shall maintain the Property, grounds, fixtures, and any personal property specifically scheduled herein in its present condition, normal wear and tear excepted.
    (B) Seller shall bear risk of loss from fire or other casualties until time of settlement. In the event of damage by fire or other casualties to any property included in this sale that is not repaired or replaced prior to settlement, Buyer shall have the option of rescinding this Agreement and promptly receiving all monies paid on account of purchase price, or of accepting the Property in its then condition.
    (C) The Buyer is hereby notified and agrees that it is their responsibility to insure their equitable interest in the said premises at their own expense and obligation, upon signing this agreement.

21. **TIME OF THE ESSENCE** - The said time for settlement and all other times referred to for the performance of any of the obligations of this Agreement are hereby agreed to be of the essence of this Agreement. Any settlement date extension other than the extension granted to Seller in (11A of this agreement), must be in writing and agreed to by Buyer and Seller.

22. **AGENCY DISCLOSURE STATEMENT – AGENT FOR THE SELLER ONLY** - It is expressly understood and agreed between the parties that the named Agent for Seller including Auctioneer(s), any Subagents, their salespeople, licensees, employees, staff officers and/or partners, etc., are Agent(s) for the Seller only. Buyer has the right and obligation to hire a Buyer representative to act on their behalf. The expense of Buyer representation is at the sole cost, expense and obligation of the Buyer.

23. **RELEASE** - The Seller and Buyers save harmless and indemnify the said Auction Company, Auctioneers, its employees, licensees, agents, successors and assigns from any and all claims, liabilities, suits, losses, costs, harm or damages pertaining to this agreement and transaction. It is understood and agreed that Sherman Hostetter Group LLC (Hostetter Auctioneers), its employees, licensees, agents, successors or assigns shall not in any case whatsoever be held liable by either party for the performance or non-performance of any item or covenant of this agreement. Seller and Buyer hereby releases, quit claims and forever discharges AUCTION COMPANY, AUCTIONEERS, ALL AGENTS, their SUBAGENTS, EMPLOYEES, LICNESEES and any OFFICER or PARTNER of any one of them and any other PERSON, FIRM, or CORPORATION who may be liable by or through them, from any and all claims, losses or demands, including, but not limited to, personal injuries and property damage and all of the consequences thereof, whether known or not, including anything arising from the presence of termites or other wood-boring insects, radon, mold, fungi or indoor air quality, lead-based paint hazards, any wetlands or flood plains, environmental hazards, hazardous materials, oil or gas drilling or processing, any defects in the individual on-lot sewage system or deficiencies in the on-site water service system, or any defects of conditions on the Property or any zoning and/or title discrepancies, including any inaccurate or outdated information and/or descriptions in all marketing, bidders packs, terms and conditions, oral explanations, etc. All marketing material is deemed reliable but specifically not guaranteed. This release shall survive settlement or lack thereof.

24. **REPRESENTATIONS**
    (A) Buyer understands that any representations, claims, advertising, promotional activities, brochures or plans of any kind made by Seller, agents or their employees are not part of this agreement, unless expressly incorporated or stated in this agreement.
    (B) **It is understood that Buyer has inspected the property before signing this Agreement of Sale (including fixtures and any personal property specifically scheduled herein), or has waived the right to do so, and has agreed to purchase it in its present "as-is" condition. Buyer acknowledges that the Seller, Auction Company/s, Auctioneers, their employees, licensees, agents, successors and assigns have not made an independent examination or determination of the structural soundness of the property, the age or condition of the components, environmental conditions, the permitted uses, or of conditions existing in the locale where the property is situated; nor have they made a mechanical inspection of any of the systems contained therein. The Buyer should avail themselves the opportunity to inspect to their complete satisfaction before bidding. By signing this agreement, Buyer waives any contingency or remedy for any inspections desired by the Buyer.** Buyers understand any unfavorable findings are not a contingency in this agreement and agree to release as set forth in sections 6, 7 and 23 of this agreement.
    (C) It is further understood that this agreement contains the whole agreement between Seller and Buyer and there are no other terms, obligations covenants, representations, statements or conditions, oral or otherwise of any kind whatsoever concerning this sale. And any prior agreement, if any, whether oral or written, has been merged and integrated into this agreement. Furthermore, this agreement shall not be altered, amended, changed, or modified except in writing executed by the parties.
    (D) The headings, captions, and section numbers in this agreement are meant only to make it easier to find sections (paragraphs).
    (E) Brokers, Auction Company/s, Auctioneers, their employees, licensees, agents, successors and assigns, have provided or may provide services to assist unrepresented parties in complying with this agreement.

25. **WAVER OF CONTINGENCIES** – Seller and Buyer agree that this is a contingent free sales agreement (no contingencies except for a free and clear title to the property). Seller and Buyer agree to the release in section 6, 7 and 23 of this agreement.

Buyer Initials _____   Seller Initials _EEB_
 _for EEB_

5

26. **TECHNOLOGY** - Please note, Times and appeals of the auction are current and at approximately 3:45 times etc based on the Eastern Standard Time Zone unless stated otherwise. Sherman Hostetter Group LLC (Hostetter Auctioneers) reserves the right to close early, maintain scheduled close and/or extend the close for auction at any time at its sole discretion. In the event there are technical difficulties related to the server, software, website or any other online auction-related aspects/technologies, Hostetter Auctioneers reserves the right to conclude, extend, re-post, delay and/or cancel bidding of the auction partially by lot/catalog number/s and/or entirely. Neither the company providing the software or Sherman Hostetter Group LLC (Hostetter Auctioneers) including licensees, auctioneers, employees or staff will be held responsible for any missed bids or the failure of the server, software, website or any other online auction-related technologies to function properly for any reason. Sellers and Buyers understand any unfavorable events or findings as mentioned above are not a contingency in this agreement and agree to release as set forth in sections 6, 7 and 23 of this agreement.

27. **LITIGATION** - The Seller and Buyers for this transaction hereby agree that if litigation results, all proceedings will be conducted in the Court of Common Pleas in the County of Beaver, in the Commonwealth of Pennsylvania.

28. **MEGAN'S LAW** – The Pennsylvania General assembly has passed legislation (often referred to as "Megan's Law" 42 Pa.C.S.&9791 et.seq.) providing for community notification of the presence of certain convicted sex offenders. Buyers are encouraged to contact the Municipal police department or the state police for information relating to the presence of sex offenders near a particular property, or to check the information on the Pennsylvania State Police web site at www.pameganlaw.statepa.us

29. **PROPERTY DEFECTS DISCLOSURE**
    (A) Seller and Buyer acknowledge that Auctioneer:
       1. Is a licensed Auctioneer and Real Estate Broker in Pennsylvania; and
       2. Is not an expert in residential or commercial property inspections, construction, engineering, or environmental matters; and
       3. Has not made and will not make any representations or warranties nor conduct investigations of the environmental condition or suitably of the property or any adjacent property.
       4. Buyers understand any unfavorable findings are not a contingency in this agreement and agree to release as set forth in sections 6, 7 and 23 of this agreement.

    (B) Seller and Buyer agree to indemnify and to hold Auctioneers and Brokers harmless from and against any and all environmental claims, demands or liabilities, including attorney's fees and court costs, which arise from or are related to the environmental condition or suitability of the property prior to, during, or after Seller's and Buyer's occupation of the property and without limitation.
       1. Contamination of the property,
       2. Presence of any environmentally sensitive areas on the property,
       3. Presence on the property of any substance/s which are environmentally contaminated,
       4. Violation of any laws, local, state and federal,
       5. Etc.

    (C) The provisions of this Section, and all sections of this Agreement, will survive settlement or lack there of.

30. **ADDITIONS:** _Subject to Court Approval_

31. **Indemnify** - Seller/s agree to indemnify and save harmless Sherman Hostetter Group LLC (Hostetter Auctioneers) Auctioneers and their employees, licensees, agents, successors or assigns, against any and all claims, injury, loss, liabilities, lawsuits, damages, demands, action or cause of action whatsoever in any manner arising from this auction or privately negotiated sale; before, during or after the auction, including any provision contained in this agreement. Auctioneers are not responsible for accidents. Sellers must insure their own liabilities, interests, etcetera in all real estate and/or personal property. The Seller/s also agree to indemnify and save harmless Auctioneers and their company, employees, licensees, agents, successors or assigns, against any and all claims, injury, loss, liabilities, lawsuits, damages, demands, action or cause of action whatsoever in any manner, etcetera, pertaining to hazardous materials, substances, sites and/or conditions, (known or unknown), and are strictly and solely the Seller's ownership, responsibility and liability.

32. **BUYERS PREMIUM** - A Buyers Premium is a flat fee amount or a percentage of the high bid, which is added to the high bid amount to achieve the contract or sales price. As per the Auction Listing Agreement, the Sellers have given the Auctioneers the authority to charge a Buyers Premium. The Buyers understand that the Buyers Premium on the Real Estate (is per property) in the amount of TEN (10) % or flat fee of _$7,400_, whichever is greater.

Buyer Initials _MV_    Seller Initials _EEB_ _CPC_
_per EEB_

6

33. **SIGNATURES** - Buyer and Seller acknowledge that they have read and understand the notices, requirements and legal obligations of this agreement before signing. NOTE: ONCE THIS AGREEMENT IS SIGNED, THIS AGREEMENT IS A BINDING CONTRACT. Return by facsimile transmission (FAX), email or regular mail of this Agreement of Sale, and all addenda, bearing the signatures of all parties, constitutes acceptance of this Agreement. Parties to this transaction are advised to consult an attorney before signing if they desire legal advice.

WITNESS_____ BUYER_____ DATE 11/20/19
WITNESS_____ BUYER_____ DATE_____
WITNESS_____ BUYER_____ DATE_____
WITNESS_____ BUYER_____ DATE_____

32. **COMMISSION/FEE** - Seller hereby approves the above contract this ___20th___ day of ___November___ 2019 AD. In consideration of the services rendered in procuring the Buyer, Seller agrees to pay Sherman Hostetter Group LLC (Hostetter Auctioneers) a fee of _10%_ percent of/from the herein specified sale price (which may be in the form of a Buyer's Premium and/or a Seller Commission) or a flat fee amount of _$7,400_____. Auctioneer's fee/commission is based on the highest bid or offer received. In the event of Buyer default, any monies paid on account shall be first paid to Sherman Hostetter Group, LLC (Hostetter Auctioneers) for any and all unpaid expenses, and then the balance shall divided equally (50/50) between Seller and Sherman Hostetter Group LLC (Hostetter Auctioneers). Sellers agree that the forfeiture of the Buyer's deposit (for any reason) does not relieve the Seller of the Auctioneers fee/commission due.

WITNESS_____ SELLER CRP P. Oakes for Eric E. Bononi  DATE 11/20/2019
WITNESS_____ SELLER E E Bononi  DATE_____
WITNESS_____ SELLER SUBJECT TO COURT APPROVAL  DATE_____
WITNESS_____ SELLER_____ DATE_____



7055 Big Beaver Blvd.
Beaver Falls, PA 15010
Office: 724-847-1887
Fax: 724-847-3499
Email: sold@hostetterauctioneers.com
Website: SHAuctions.com

Buyer Initials _____    Seller Initials CRB for EEB

7

## INFORMATION REGARDING THE RESIDENTIAL PROPERTY DISCLOSURE ACT

Generally speaking, the Seller's Property Disclosure Act applies to any sale, exchange, installment sales contract, lease with an option to buy, or transfer of an interest in real estate where not less than one and not more than four residential dwelling units are involved. The Act stipulates that certain disclosures have to be made and delivered in a form defined by the Act, before an agreement of sale is signed.

The Act defines nine exceptions, where the form does not have to be used.

1. Transfers that are a result of a court order.
2. Transfer to a mortgage lender that result from a Buyer's default and subsequent foreclosure sales that result from the default.
3. Transfers by a fiduciary during the administration of a decedent's estate, guardianship, conservatorship or trust.
4. Transfers from a co-owner to one or more other co-owners.
5. Transfers made to a spouse or a direct descendant.
6. Transfers between spouses that result from divorce, legal separation, or property settlement.
7. Transfers by a corporation to its shareholders as part of a plan of liquidation.
8. Transfers by a partnership to its partners as part of a plan of liquidation.
9. Transfers of new construction that has never been occupied when:
   a. The Buyer has received a one-year written warranty covering the construction;
   b. The building has been inspected for compliance with the applicable building code or, if none, a nationally recognized model building code; and
   c. A certificate of occupancy or a certificate of code compliance has been issued for the dwelling.

In addition to these exceptions, the Act limits the disclosure in the cases of condominiums and cooperatives to the Seller's particular unit. It does not impose disclosures regarding common areas or facilities; those elements are already addressed in the laws that govern the resale of condominiums and cooperative interests.

## NOTICE TO BUYERS REGARDING UREA-FORMALDEHYDE FOAM INSULATION

**Urea-formaldehyde:** Urea-formaldehyde foam insulation (UFFI) is a thermal insulation material that is manufactured at the site of installation and pumped into the space between the walls of the building being insulated where it hardens to form a layer of insulation. The health risks identified by the United States Consumer Product Safety Commission (CPSC) included cancer, acute illness such as eye, nose and throat irritation and sensitization. Subsequently, Federal Court decision did overturn the CPSC'S UFFI ban. Said decision did not state that UFFI poses no health risk. What the CPSC failed to establish however, is that the health risk is "unreasonable". Tests can be conducted to determine the concentration of formaldehyde gas present in a home. Various tests are available to measure the presence or toxicity of UFFI. A test preferred by the CPSC is the chromotropic acid method. Such information, as is available concerning tests and testing procedures, can be obtained by writing to the United States Consumer Safety Commission, Office of the Secretary, Third Floor, 5401 Westbard Avenue, Bethesda, Maryland 20207. Should it be desirable to remove UFFI, the cost will vary with the type of home and the accessibility of the insulation. Such costs have been estimated to be in the range of $4000.00 to $20,000.00 but will vary with the type of construction (face brick or siding), the extent of the insulation, the cost of restoration required and other factors.

## NOTICE TO BUYERS REGARDING MOLD

**Mold:** Mold contaminants may exist in the Property of which the Seller, Seller's Agent(s) and Auctioneers are unaware. These contaminants generally grow in places where there is or may have been excessive moisture, such as where leakage may have occurred in roofs, pipes, walls, plant pots, or where there has been flooding; these conditions may be identified with a typical home inspection. The Seller, Seller's Agent(s) and Auctioneers recommend BUYER obtain a home inspection to better determine the condition of the property. Neither the Seller, Seller's Agents nor Auctioneers are experts in the field of mold contaminants. In the event suspect mold contamination is discovered, it is recommended that the Buyers satisfy themselves as to property condition by having a mold inspection performed. The cost and quality of such inspections may vary. Any and all inspections and tests are at the Buyer's sole expense and obligation. Companies able to perform appropriate inspections may be found in the Yellow Pages or on the World Wide Web under "Microbial or Mold Inspections" or "Environmental and Ecological Services." Buyer understands any unfavorable findings (regardless of the level) are not a condition or contingency of this agreement and agree to release as set forth in section 6, 7 and 23 of this agreement.

Buyer Initials _____    Seller Initials _____

8

## NOTICE TO BUYERS REGARDING RADON

**Radon:** Radon is a natural, radioactive gas that is produced in the ground by the normal decay of uranium and radium. Studies indicate that extended exposure to high levels of radon gas can increase the risk of lung cancer. Radon can find its way into any air space, including basements and crawl spaces and can permeate a structure. The U.S. Environmental Protection Agency (EPA) advises corrective action if the annual average exposure to radon exceeds 0.02 working levels or 4 Pico Curies/liter. If a house has a radon problem, it usually can be cured by increased ventilation and/or by preventing radon entry.

## LEAD: (FOR PROPERTIES BUILT BEFORE 1978)

**Lead Warning Statement:** Every purchaser of any interest in residential property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a potential risk to pregnant women. The Seller of any interest in residential real property is required to provide the Buyer with any information on lead-based paint hazards from risk assessments or inspections in the Seller's possession and notify the Buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

**Lead Hazard Disclosure Requirements:** In accordance with the residential Lead-Based Paint Hazard Reduction Act, any Seller of the property built before 1978 must provide the Buyer with an EPA- approved lead hazards information pamphlet titled *Protect Your Family From Lead in Your Home* and must disclose to the Buyer and Seller's agent the known presence of lead-based paint and/or lead based paint hazards in or on the property being sold, including the basis used for determining that lead-based paint and/or lead-based paint hazards exist, the location of lead-based paint and/or lead-based paint hazards, and the condition of painted surfaces. Any Seller of a pre-1978 structure must also provide the Buyer with any records or reports available to the Seller pertaining to the lead-based paint and/or lead-based paint hazards in or about the property being sold, the common areas, or other residential dwellings in multi-family housing. The Act further requires that before a Buyer is obligated to purchase any housing constructed prior to 1978, the Seller shall give the Buyer 10 days (unless Buyer and Seller agree in writing to another time period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards. The opportunity to conduct a risk assessment or inspection may be waived by the Buyer, in writing. Neither testing nor abatement is required of the Seller. Housing built in 1978 or later is not subject to the Act.

## CONDITIONS OF SALE

FIRST: Unless stated absolute auction, the Seller reserves the right to reject any and all bids.

SECOND: The highest bidder shall be declared to be the Purchaser subject to the right of the Seller to disapprove any and all bids. The Seller gives up the right to disapprove the high bid if sold at absolute auction.

THIRD: Risk of loss or damage to the property shall pass to Buyer when the property is struck down by the auctioneer. Subsequent loss or damage to the property shall not relieve the Buyer from their obligation to purchase property. Seller will keep property insured until the time of settlement.

FOURTH: The property is being sold "as-is", "where-is" condition. Seller makes no representations or warranties concerning the property to be sold. It is understood that the Buyer had the right to inspect the property prior to the auction and either has inspected the property or waives the right to do so. Buyer agrees to purchase the property as a result of such inspection/s or waive the right of same. Buyer is relying on their own investigations and inspections and not relying on any representation, warranty, brochure, mailer, fax, email, printed document, etc made by the Seller, Seller's Agents and Auctioneers, Buyer hereby agrees to purchase the property in its present condition in accordance with sections 6, 7, 23 and 24(B) of this agreement.

FIFTH: If the Buyer fails to comply with the above terms and conditions, Buyer shall forfeit the deposit as assessed and liquidated damages, and the Seller may proceed to make a resale of the property, either at public or private auction or a privately negotiated sale or any manner the Auctioneer deems Necessary. Seller and Auctioneers shall retain all rights afforded them by law and pursue additional legal remedies, if desired.

Buyer Initials _____    Seller Initials _CPCŽ_

9